**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

THE NATIONAL HEP-CAMP ASSOCIATION,

Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION and LINDA MCMAHON, in her official capacity as Secretary of Education,

Defendants.

No. 1:25-cv-02730-CJN

**DEFENDANTS' MEMORANDUM OPPOSING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 3

I. Statutes and Regulations .......... 3

II. This Litigation .......... 6

LEGAL STANDARD .......... 9

ARGUMENT .......... 10

I. The Court Lacks Jurisdiction Over Plaintiff's Claims. .......... 10

A. Plaintiff's Challenge To The Department's Alleged Inaction Is Moot. .......... 10

B. No Exception To Mootness Applies. .......... 14

II. Plaintiff Cannot Establish Likelihood of Success on the Merits Because All Its Claims Fail As A Matter Of Law. .......... 16

A. Plaintiff's Claims Incorrectly Assume That July 1 Is The Applicable Deadline.. 16

B. Plaintiff's APA Claims Fail (Counts I–IV and VI). .......... 21

C. Plaintiff's Constitutional Claim Fails (Count V). .......... 26

D. Plaintiff's *Ultra Vires* and Mandamus Claims Fail As A Matter Of Law (Counts VII–VIII). .......... 28

III. Plaintiff Has Not Demonstrated That It Will Suffer Irreparable Harm. .......... 28

IV. The Balance of Equities Does Not Favor The Requested Injunction. .......... 30

V. If The Court Decides To Grant Relief, Any Relief Should Be Limited to Affected Members. .......... 31

VI. Plaintiff Should Be Ordered To Post Security In Connection With Any Preliminary Injunctive Relief And Any Preliminary Relief Should Be Stayed Pending Appeal. .......... 33

CONCLUSION .......... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska v. USDA*,
17 F.4th 1224 (D.C. Cir. 2025) .......... 16

*Alphabet Workers Union-Commc'n Workers of Am., Local 9009 v. NLRB*,
134 F.4th 1217 (D.C. Cir. 2025) .......... 14, 15

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... 15

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) .......... 9

*Anglers Conservation Network v. Pritzker*,
809 F.3d 664 (D.C. Cir. 2016) .......... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Boening v. CIA*,
579 F. Supp. 2d 166 (D.D.C. 2008) .......... 12

*Cabrera v. Dep't of Labor,*
2025 WL 2092026 (D.D.C. July 25, 2025) .......... 25

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .......... 28, 29, 30

*City of Houston v. HUD*,
24 F.3d 1421 (D.C. Cir. 1994) .......... 15

*Clarke v. United States*,
915 F.2d 699 (D.C. Cir. 1990) .......... 15

*Cobell v. Norton*,
391 F.3d 251 (D.C. Cir. 2004) .......... 9

*Comm. in Solidarity with the People of El Sal. v. Sessions*,
929 F.2d 742 (D.C. Cir. 1991) .......... 9

*Conservation Force, Inc. v. Jewell*,
733 F.3d 1200 (D.C. Cir. 2013)........................................................................ 1, 10

*Da Costa v. Immig. Inv. Program Off.*,
80 F.4th 330 (D.C. Cir. 2023) ............................................................................ 23

*Dalton v. Specter*,
511 U.S. 462 (1994) .......................................................................................... 27

*Deakins v. Monaghan*,
484 U.S. 193 (1988) .......................................................................................... 14

*Doe v. Doe Agency*,
608 F. Supp. 2d 68 (D.D.C. 2009)..................................................................... 12

*DSE, Inc. v. United States*,
169 F.3d 21 (D.C. Cir. 1999)............................................................................. 34

*FBI v. Fikre*,
601 U.S. 234 (2024) .......................................................................................... 12

*Fed. Express Corp. v. Dep't of Commerce*,
39 F.4th 756 (D.C. Cir. 2022) ............................................................................ 28

*Food & Drug Admin. v. Wages & White Lion Invs., LLC*,
604 U.S. 542 (2025) ..................................................................................... 25, 26

*Glob. Health Council v. Trump*,
2025 WL 2480618 (D.C. Cir. Aug. 28, 2025).............................................. 27, 28

*González-Vera v. Townley*,
83 F. Supp. 3d 306 (D.D.C. 2015)..................................................................... 12

*Gray v. Off. of Personnel Mgmt.*,
771 F.2d 1504 (D.C. Cir. 1985)......................................................................... 10

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......................................................................................... 21

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......................................................................................... 34

*Hi-Tech Pharmacal Co. v. FDA*,
587 F. Supp. 2d 1 (D.D.C. 2008)....................................................................... 28

*Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*,
628 F.3d 568 (D.C. Cir. 2010)........................................................................................ 10

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ........................................................................................................ 32

*In re Nat'l Nurses United*,
47 F.4th 746 (D.C. Cir. 2022) ......................................................................................... 28

*J.T. v. District of Columbia*,
983 F.3d 516 (D.C. Cir. 2020)........................................................................................ 14

*Jerome Stevens Pharms., Inc. v. FDA*,
402 F.3d 1249 (D.C. Cir. 2005).......................................................................................... 9

*Karst Envtl. Educ. & Prot., Inc. v. EPA*,
475 F.3d 1291 (D.C. Cir. 2007)...................................................................................... 12

*Knox v. Serv. Emps. Int'l Union*,
567 U.S. 298 (2012) ........................................................................................................ 15

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ................................................................................................. 21, 22

*Maryland v. King*,
567 U.S. 1301 (2012) ...................................................................................................... 31

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 .................................................................................................................. 23

*Mexichem Specialty Resins v. EPA*,
787 F.3d 544 (D.C. Cir. 2015)........................................................................................ 23

*Munyaneza v. Blinken*,
2022 WL 4598629 (D.D.C. Sep. 30, 2022).................................................................... 23

*Mykonos v. United States*,
59 F. Supp. 3d 100 (D.D.C. 2014)...................................................................................... 9

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025)..................................................................................................... 34

*Nat'l Treasury Emps. Union v. Vought*,
2025 WL 2371608 (D.C. Cir. Aug. 15, 2025)................................................................ 27

*Nichols v. Vilsack*,
2014 WL 12941692 (D.D.C. May 29, 2014)............................................................. 25

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................. 9, 30

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ................................................................................................. 22

*Open Tech. Fund v. Pack*,
470 F. Supp. 3d 8 (D.D.C. 2020)............................................................................. 31

*Pub. Gas & Elec. Co. v. Fed. Power Comm'n*,
506 F.2d 33 (D.C. Cir. 1974).................................................................................. 23

*Sai v. TSA*,
54 F. Supp. 3d 5 (D.D.C. 2014)............................................................................... 25

*Samma v. Dep't of Defense*,
136 F.4th 1108 (D.C. Cir. 2025) ............................................................................. 10

*State v. Musk*,
769 F. Supp. 3d 1 (D.D.C. 2025)............................................................................. 29

*Swisher Int'l, Inc. v. FDA*,
2024 WL 4119480 (D.D.C. Sep. 9, 2024)................................................................ 24

*Telecommunications Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984).................................................................................. 23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ............................................................................................... 10

*Trump v. CASA, Inc.*,
145 S. Ct. 2540 (2025)....................................................................................23, 31, 32

*United States v. Neely*,
124 F.4th 937 (D.C. Cir. 2024) ............................................................................... 18

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009)............................................................................... 12

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ............................................................................................... 9, 29

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ... 29

**Statutes**

5 U.S.C. § 701(a) ... 21
5 U.S.C. § 706(2)(D) ... 25
20 U.S.C. § 1070d-2 ... 24
20 U.S.C. § 1070d-2(a) ... 3
20 U.S.C. § 1070d-2(b) ... 3
20 U.S.C. § 1070d-2(c) ... 4
20 U.S.C. § 1070d-2(d) ... 4
20 U.S.C. § 1070d-2(e) ... 4, 17
20 U.S.C. § 1070d-2(i) ... 5, 17
20 U.S.C. § 1225(a) ... 17, 18, 20
Pub. L. No. 96-374 ... 3
Pub. L. No. 118-47 ... 5, 6, 17, 18, 19, 21, 22
Pub. L. No. 119-4 ... 5

**Rules**

Federal Rule of Civil Procedure 65(c) ... 34

**Regulations**

34 C.F.R. § 75.217 ... 19
34 C.F.R. § 75.217(a) ... 4
34 C.F.R. § 75.218(a) ... 4, 12
34 C.F.R. § 75.235 ... 4
34 C.F.R. § 75.235(a) ... 19
34 C.F.R. § 75.236 ... 4
34 C.F.R. § 75.251(a) ... 4
34 C.F.R. § 75.251(b) ... 4
34 C.F.R. § 75.253(a) ... 5, 11
34 C.F.R. § 75.253(d) ... 5, 20
34 C.F.R. § 75.253(g) ... 5, 11, 12, 20, 30
34 C.F.R. § 206.2(a) ... 3
34 C.F.R. § 206.3(b) ... 3
34 C.F.R. § 206.3(c) ... 4
34 C.F.R. § 206.20 ... 4
89 Fed. Reg. 70,604 (Aug. 30, 2024) ... 6
89 Fed. Reg. 70,610 (Aug. 30, 2024) ... 6
90 Fed. Reg. 45,031 (Sep. 18, 2025). ... 8, 12

**Other Authorities**

Committee Print of the Comm. on Appropriations on H.R. 2882/Public Law 118-47 (2024) ... 18

Dep't of Educ., *Application for New Grants Under the High School Equivalency Program* ... 7, 22

Dep't of Educ., *Application for New Grants Under the College Assistance Migrant Program* 7, 22

*Honorable George Miller*, B-289801,
2002 WL 31950147 (Comp. Gen. Dec. 30, 2002) ........................................................................ 8

Megan S. Lynch and Jessica Tollestrup, Congr. Rsch. Serv., R43481, Advance Appropriations, Forward Funding, and Advance Funding: Concepts, Practice, and Budget Process Considerations (2019)........................................................................................................ 18

## INTRODUCTION

In this case, Plaintiff the National HEP-CAMP Association seeks declaratory and equitable relief compelling action by the U.S. Department of Education and Secretary McMahon (collectively, the Department) regarding new and continuation award funding decisions for HEP-CAMP grants. Shortly after filing its complaint, Plaintiff moved for a preliminary injunction compelling the same action.

That motion and the entire complaint are clearly moot. Earlier this week, the Department made its decisions on the pending funding decisions for HEP-CAMP grants, both as to awards for new grants (new awards) and awards to existing grantees for future years of their grants (continuation awards). The Department's actions and communications are described in sworn declarations attached to this filing. For new awards, the Department informed applicants that it does not plan to issue any new awards this fiscal year. For continuation awards, most current grantees will receive them, but some will not. Non-continued grantees have seven days to seek reconsideration, and the Department has kept available enough funds to be awarded to any non-continued grantee that successfully seeks reconsideration of the Department's decision. After decisions are made on any reconsideration requests, the Department intends to have obligated all $52.123 million that Congress appropriated for HEP-CAMP in fiscal year 2025.

These recent decisions give Plaintiff exactly what its complaint and motion request. Plaintiff asks only for action on HEP-CAMP new award applications and continuation award decisions, and has pleaded injuries resulting from inaction and delay. Now that the Department has acted, Plaintiff "has already obtained all the relief that it has sought," and the Court cannot order any effective relief, particularly given the Department's intent to obligate all funds before September 30. *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quotation marks omitted). No mootness exception applies either, so the Court should deny the

motion as moot and dismiss the entire case on that basis. If Plaintiff wishes to challenge the Department's decisions from this week, the proper course would be through an entirely new complaint.

Even if the current motion and the entire case were not moot, the motion still should be denied and the Complaint dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiff's challenges to the allegedly illegal inaction depend on the mistaken assumption that the Department was required to make HEP-CAMP awards on July 1. Neither the governing statutes nor the Department's regulations require action by that date. And although Plaintiff puts much stock in the Department's past history of approvals before July 1, Plaintiff has identified no source of authority requiring the Department to follow that timeline. The grant award notifications themselves make clear that the Department's previous choice to obligate and disburse funds before July 1 was never guaranteed.

Instead, the HEP-CAMP funds remain available for obligation until September 30, the Department has obligated the vast majority of those funds this week, and the Department has a clear plan for obligating the remaining funds prior to September 30. That fact alone means Plaintiff's APA claims are unlikely to succeed on the merits, as are Plaintiff's *ultra vires* and mandamus claims. Plaintiff also asserts that the Department's actions violate the Constitution, but that particular claim is a repackaged statutory claim that cannot be brought in a standalone manner, according to the Supreme Court. For the same reasons, Plaintiff has failed to state its claims.

Specific to the motion, it also founders on the irreparable-harm requirement. Plaintiff cites supposedly existential harms resulting from the Department's inaction, but those harms are no longer imminent or even certain now that the Department has acted. Plaintiff and many of its members will not be required to close their doors or stop services. And, in any event, the alleged

harms are economic in nature and stated on behalf of third parties, precisely the types of harms that cannot tip the scales in favor of extraordinary preliminary relief.

At bottom, Plaintiff's motion and complaint seek relief that the Department has already provided. Any further challenge to those actions must be made as part of a new complaint (and new motion, if appropriate). Regardless, if the current motion and complaint are not moot, the motion fails under the familiar four-factor standard, and Plaintiff has failed to state any claim in its complaint, requiring dismissal of the complaint under Rule 12(b)(6).

## BACKGROUND

### I. Statutes and Regulations

In 1980, Congress added Section 418A to the Higher Education Act. *See* Pub. L. No. 96-374, § 406, 94 Stat. 1367, 1411–12 (1980). That section provides that the Secretary "shall maintain and expand the high school equivalency program and college assistance migrant program projects" organized by "institutions of higher education" and "private nonprofit organizations working in cooperation" with those institutions. 20 U.S.C. § 1070d-2(a). Those are the HEP and CAMP grant programs at issue in this case, commonly referred to jointly as HEP-CAMP. Consistent with the statute, only institutions of higher education or nonprofit organizations may apply for HEP-CAMP grants. *See* 34 C.F.R. § 206.2(a).

Section 418A as enacted authorizes various services under each grant program. For HEP, these include "educational services which provide instruction designed to help students obtain a general education diploma." 20 U.S.C. § 1070d-2(b)(2). Eligible students must be, among other things, more than 16 years old, lack a high school diploma, and either themselves or their immediate family must have spent at least 75 days during the previous two years in migrant or seasonal farmwork. *Id.* § 1070-2(b)(1). Department regulations also require that the student not be currently enrolled in school. *See* 34 C.F.R. § 206.3(b)(2).

For CAMP, grant recipients must offer authorized services to persons who either themselves or their immediate family members have spent at least 75 days during the past two years in migrant or seasonal farmwork and "meet the minimum qualifications for attendance at a college or university." 20 U.S.C. § 1070-2(c)(1). The Department has construed the latter requirement to mean that any eligible student must be enrolled at the participating college or university and not have progressed past the first year of said enrollment. *See* 34 C.F.R. § 206.3(c)(1)–(2). Every HEP-CAMP application must include a management plan assuring the Department "that the grant recipient will coordinate the project." 20 U.S.C. § 1070-2(d). The same plan must include provisions for many services, including an evaluation plan. *See id.*; *see also* 34 C.F.R. § 206.20.

There are two types of HEP-CAMP awards, both implicated here. First are new awards, under which the Secretary selects an application based on "applicable statutes and regulations, the selection criteria, and any priorities or other requirements." 34 C.F.R. § 75.217(a). If an application is not selected for funding, the Secretary informs the applicant. *See id.* § 75.218(a). If a grant is awarded, the Secretary issues a notification of grant award, also called a GAN, which "sets the amount of the grant award and establishes any other specific conditions." *Id.* § 75.235. That grant "obligates both the Federal Government and the grantee." *Id.* § 75.236.

The second type is a continuation award. The Higher Education Act authorizes the Secretary to award HEP-CAMP grants "for a period of 5 years." 20 U.S.C. § 1070d-2(e). Under Department regulations, the Secretary "usually approves a budget period of not more than 12 months," and makes a grant for the initial budget period, *i.e.*, for the first 12 months. 34 C.F.R. § 75.251(a), (b)(1). To receive a continuation award for each successive 12-month period, the grantee must continue to meet the program's eligibility requirements and provide various types of

information to the Secretary. *See id.* § 75.253(a). "If the Secretary makes a continuation award . . . [t]he new budget period begins on the day after the previous budget period ends." *Id.* § 75.253(d)(2). Neither the Higher Education Act nor Department regulations requires that the budget period for HEP-CAMP grants begin on a specific day of the month. If the Department determines that a grantee should not receive a continuation award, regulations allow the grantee to seek reconsideration and require the Department to consider that request for reconsideration. *See id.* § 75.253(g).

The Higher Education Act authorizes appropriations for the Department to award HEP-CAMP grants. *See* 20 U.S.C. § 1070d-2(i). Most recently, Congress passed and the President signed the Full-Year Continuing Appropriations and Extensions Act, a continuing resolution that funded the government for fiscal year 2025 at "the amounts appropriated" for fiscal year 2024, subject to certain exceptions not relevant here. Pub. L. No. 119-4, § 1101(c), 139 Stat. 9, 12 (2025) (2025 CR). Any "requirements, authorities, conditions, [or] limitations" present in the appropriations statutes for fiscal year 2024 would "continue in effect" through September 30, 2025, the last day of fiscal year 2025, "[u]nless otherwise provided for." *Id.* §§ 1105–1106, 1116, 39 Stat. at 12. In other words, funds for fiscal year 2025 would be available until September 30, 2025, but any conditions enacted in the previous fiscal year's spending bills would continue to govern.

As relevant here, the HEP and CAMP programs are part of the Education for the Disadvantaged account within the Department. *See* Ex. 1, Declaration of Steven Byrd (Byrd Decl.) ¶ 4(d); Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, tit. III, 138 Stat. 460, 681–82 (2024 Appropriations Statute). In fiscal year 2024, Congress appropriated more than $19.1 billion "[f]or carrying out . . . section 418A of the Higher Education Act," the statutory section that

authorizes HEP-CAMP, as well as other statutory provisions. *See* 2024 Appropriations Statute, tit. III, 138 Stat. 681–82. The full appropriation in relevant part is below:

> For carrying out title I and subpart 2 of Part B of title II of the Elementary and Secondary Education Act of 1965 (referred to in this Act as "ESEA") and section 418A of the Higher Education Act of 1965 (referred to in this Act as "HEA"), $19,107,790,000, of which $8,179,490,000 shall become available on July 1, 2024, and shall remain available through September 30, 2025, and of which $10,841,177,000 shall become available on October 1, 2024, and shall remain available through September 30, 2025, for academic year 2024–2025. . . . *Provided further*, That $52,123,000 shall be for carrying out section 418A of the HEA.

*Id.* The upshot is that Congress appropriated $52.123 million for HEP- CAMP in fiscal year 2024, and the same conditions carried over to fiscal year 2025 by virtue of the 2025 CR. And, although Congress required that $8.1 billion of the appropriated funds in the Education for the Disadvantaged account would become available on July 1, Congress did not specify that the HEP-CAMP funds should be included in that $8.1 billion.

## II. This Litigation

On August 30, 2024, the Department published Notices in the Federal Register inviting applications for new HEP-CAMP awards for fiscal year 2025. *See* 89 Fed. Reg. 70,604 (Aug. 30, 2024) (HEP); 89 Fed. Reg. 70,610 (Aug. 30, 2024) (CAMP). The notices described the Department's selection criteria for new awards and for continuation awards. *See, e.g.*, *id.* at 70,608–09 (new awards); *id.* at 70,616 (continuation awards). The Department remarked in the notices that Congress had not yet appropriated money for either program, and the actual level of funding would depend on "the availability of funds and the quality of applicants." *See id.* at 70,606–07. Applications were due by November 13, 2024. *See id.* at 70,604, 70,610. On the same day that the Department published these notices in the Federal Register, it also published

application packets on its website.[1] In those packets, the Department noted that grants "are expected to be awarded in May 2025," but provided no other timetable for the Department's decisionmaking process. *Id.* at 4.

On August 19, 2025, Plaintiff filed a complaint seeking declaratory and injunctive relief that would require the Department to issue continuation awards, act on pending applications for new awards, and disburse all HEP-CAMP funds for fiscal year 2025. *See generally* ECF No. 1 (Compl.). One day later, Plaintiff filed a motion for a preliminary injunction requesting the same relief. *See* ECF No. 3 (Motion or Mot.). Plaintiff is a membership association of more than 80 members "that operate either a HEP or a CAMP project, or both." Compl. ¶ 7. For purposes of its Motion, Plaintiff claims to represent two groups of members. The first applied in 2024 for new HEP-CAMP grants, to be awarded in fiscal year 2025. Mot. 14. The second comprises members that have received HEP-CAMP awards in the previous year(s) and have applied for continuation awards for fiscal year 2025. *Id.* at 14–15. According to a list submitted by Plaintiff, there are 38 so-called Affected Members in these two groups, and some have applied for both a HEP award and a CAMP award. *See* Declaration of Greg Contreras (Contreras Decl.), Ex. A, ECF No. 3-1 at 13–15.[2]

After this Court entered a briefing schedule on Plaintiff's motion, the Department informed Plaintiff and the Court of its intent to make continuation-award decisions by September 23. *See* ECF No. 16 at 2. On that basis and in an attempt to narrow this dispute, the parties jointly moved

---

[1] *See* Dep't of Educ., *Application for New Grants Under the High School Equivalency Program*, https://www.ed.gov/media/document/hep-applicaiton-package-108060.pdf; Dep't of Educ., *Application for New Grants Under the College Assistance Migrant Program*, https://www.ed.gov/media/document/2025-camp-application-package-10424-108058.pdf (collectively, 2025 Application Packets).

[2] A sealed and unredacted version of this list is located at ECF No. 6-3.

to extend the briefing schedule, *see id.*, a motion that the Court granted, *see* Minute Order, Sep. 4, 2025.

On September 15, the Department issued its decisions for all HEP-CAMP applicants or current grantees. As for new award applicants, the Department informed them that the Department has cancelled the competition for new awards and will not grant any new HEP-CAMP awards in FY 2025 to "ensure[] that all priorities and requirements for Department programs align with" the Government's objectives. Ex. 2, Declaration of Ruth Ryder Att. B; *see also* 90 Fed. Reg. 45,031 (Sep. 18, 2025). As for continuation awards, the Department told 40 CAMP grantees and 33 HEP grantees that they would be receiving continuation awards, and the Department has already obligated funds for those awards. *See* Ryder Decl. ¶ 7. The Department informed eight CAMP grantees and five HEP grantees that they would not receive a continuation award. *See id.* ¶ 8. Those non-continued grantees have seven days to request reconsideration. *See id.* The Department has kept available enough funds that would be needed for obligation to each non-continued grantee in the event the Department decides on reconsideration to make a continuation award. *See id.* ¶ 11.

The Department intends that this collection of actions will result in obligation and disbursement of all HEP-CAMP funds appropriated by the 2025 CR. As part of its continuation awards, the Department has frontloaded certain grants, meaning that the Department has awarded grants for multiple budget years with the proviso that grantees must expend all funds in one budget year before drawing down funds for the next budget year. *See id.* ¶ 9; *see generally Honorable George Miller*, B-289801, 2002 WL 31950147 (Comp. Gen. Dec. 30, 2002) (describing this practice for Department grants). The 27 grantees receiving frontloaded awards are performing well, have maintained a low available balance and regular drawdowns, and have made substantial progress toward reaching their performance measure targets. *See* Ryder Decl. ¶ 9. And, as noted,

the Department has set aside some funds for the pendency of the reconsideration period. *See id.* ¶ 11. Any funds not obligated based on reconsideration requests will be obligated in the form of frontloaded awards to additional grantees receiving a continuation award. *See id.* ¶ 12. All HEP-CAMP funds available for FY 2025 will be obligated by September 30, 2025. *See id.*

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). It is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To warrant preliminary injunctive relief, the moving party must show (1) likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) that the balance of equities "tips in his favor," and (4) that an injunction is in the public interest. *Id.* at 20. Where the Government is the party opposing injunctive relief, as here, the latter two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

A "court may appropriately dispose of a case under [Federal Rule of Civil Procedure] 12(b)(1) on mootness grounds." *Mykonos v. United States*, 59 F. Supp. 3d 100, 103–04 (D.D.C. 2014) (citing *Comm. in Solidarity with the People of El Sal. v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991)). When faced with a motion to dismiss under Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted)). If needed, a court may consider materials outside the pleadings to resolve the question of whether it has jurisdiction to hear the case. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court considers "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The court accepts the factual allegations as true, but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

## ARGUMENT

### I. The Court Lacks Jurisdiction Over Plaintiff's Claims.

#### A. Plaintiff's Challenge To The Department's Alleged Inaction Is Moot.

Since the Department has acted on all pending HEP-CAMP applications, Plaintiff's Motion and Complaint are moot. Under Article III of the Constitution, federal courts are courts of limited jurisdiction that can decide only "actual, ongoing cases or controversies." *Samma v. Dep't of Defense*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (quotation marks omitted). Generally, a dispute is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (quotation marks omitted). One way mootness occurs is when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Conservation Force*, 733 F.3d at 1204 (quotation marks and brackets omitted). For example, a motion or claim to compel agency action is moot when the agency takes the requested action. *See Gray v. Off. of Personnel Mgmt.*, 771 F.2d 1504, 1514 (D.C. Cir. 1985).

Such is the case here. The Motion seeks a preliminary injunction ordering the Department to "immediately issue Continuation Awards . . . immediately act upon the Applications for New Awards . . . and, accordingly, take all steps necessary to make funds available consistent with its statutory and regulatory duties under law." Mot. 3–4; *see also* Proposed Order at 1, ECF No. 5. The Complaint seeks the exact same preliminary relief and other relief, all of which is now mooted. *See* Compl. Prayer for Relief § (h) (seeking the same preliminary injunction). Specifically, the Complaint requests "[a]n order and declaration" that "failure to issue the Continuation Awards and failure to act upon the Applications for New Awards" violates multiple laws. *See* Compl., Prayer for Relief §§ (a)–(g). The Complaint also seeks a writ of mandamus directing the Department "to immediately issue the Continuation Awards, to act upon the Applications for New Awards, and to disburse Congressionally-appropriated" HEP-CAMP funds and a permanent injunction prohibiting the Department from withholding those same actions. *Id.* §§ (i)–(j).

All of these requests are moot because the Department has taken the requested actions. On September 15, the Department issued decisions on all grantees eligible for a continuation award. *See* Ryder Decl. ¶¶ 7–8. Grantees that were determined to meet all the requirements for a continuation award received funding. *See* 34 C.F.R. § 75.253(a). The Department has also set aside some of the appropriated funds—specifically $6.152 million—for those grantees that received a non-continuation decision. *See* Ryder Decl. ¶ 11. The Department has complied with its requirement to give non-continued grantees the opportunity to request reconsideration, and has provided a seven-day window to do so. *See id.* ¶ 8; 34 C.F.R. § 75.253(g). The Department intends to rule on those reconsideration requests by September 30 and will award money from the $6.152 million that remains unobligated to grantees that are successful in their reconsideration requests.

*See* Ryder Decl. ¶ 12. Any leftover funds after this process concludes will be distributed to certain grantees previously determined to meet the requirements for continuation award funding. *See id.*

As for the applications for new awards, the Department has "act[ed] upon" them by canceling the competition for them. Mot. 4. All applicants received notice of this cancellation, as required by Department regulations, *see* 34 C.F.R. § 75.218(a), via an email from the HEP-CAMP Team Lead in the Office of Migrant Education, *see* Ryder Decl. ¶ 6. That email notes that the Department has canceled the competition for new awards and that the Department will publish a notice in the Federal Register regarding that cancellation. *See id.*, Att. B. That notice has now been published. *See* 90 Fed. Reg. 45,031 (Sep. 18, 2025).

In short, the Department has done everything that Plaintiff "ha[s] asked this Court to force the government to do." *González-Vera v. Townley*, 83 F. Supp. 3d 306, 311 (D.D.C. 2015). When a complaining party thus achieves "outside of litigation all the relief he might have won in it[,]" the Court "must dismiss the case as moot." *FBI v. Fikre*, 601 U.S. 234, 240 (2024); *see also e.g.*, *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1298–99 (D.C. Cir. 2007) (dismissing claim as "moot *when filed"* where agency had completed action before complaint was filed); *Doe v. Doe Agency*, 608 F. Supp. 2d 68, 71–72 (D.D.C. 2009) (dismissing action to compel agency to complete classification review as moot where agency had completed review); *Boening v. CIA*, 579 F. Supp. 2d 166, 172 (D.D.C. 2008) (concluding that claim to compel agency to adjudicate prepublication request within specified timeframe was moot when agency issued final decision).

The entire dispute is also moot because "the challenged conduct [has] cease[d]." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (quotation marks omitted). Each of Plaintiff's claims challenges the same conduct, namely that the Department has failed to act on the applications for continuation awards and new awards. *See* Mot. 28 ("Here, the

Department has violated APA Section 706(1) first by unlawfully withholding action on HEP and CAMP grants.") (Count I), *id.* at 34 ("The Department's failure to obligate and disburse the Congressionally-appropriated funds violates the 2025 CR.") (Count II); *id.* at 35 ("The Department was required to act on the Continuation Awards and Applications for New Awards by July 1, 2025.") (Count III); *id.* at 36 ("By not issuing Continuation Awards and not acting on the Application for New Awards, the Department has violated the Separation of Powers, the Appropriations and Spending Clauses, and the Take Care Clause.") (Counts IV and V); *id.* at 40 (alleging that "[t]he Department's decision to neither award a single grant nor disburse a single dollar" is arbitrary and capricious) (Count VI); Compl. ¶ 293 (requesting an injunction "ordering the Department and the Secretary to immediately issue the Continuation Awards, act upon the Applications for New Awards, and disburse Congressionally-appropriated fiscal year 2025 funds") (Count VII); *id.* ¶ 298 (alleging violation of clear duty to act "by failing to issue Continuation Awards, by failing to act upon the Applications for New Awards, and by failing to disburse and make Congressionally-appropriated fiscal year 2025 funds available") (Count VIII). Moreover, the harms asserted by Plaintiff are from "the Department's inaction," Mot. 14, and that same "inaction has [purportedly] caused the [Plaintiff] a cognizable injury-in-fact," *id.* 18.

Clearly, then, the allegedly wrongful conduct underlying Plaintiff's Complaint and Motion is the Department's inaction on HEP-CAMP grants. Now that the Department has acted, the factual predicate for Plaintiff's claims has disappeared, as have the injuries that Plaintiff allegedly is suffering or will suffer. And although some grantees and applicants will not receive awards, Plaintiff has never requested an injunction directing the Department to give awards to every applicant or requesting grantee. In fact, Plaintiff has expressly disclaimed seeking such an order. *See* Compl. ¶ 229 ("The Association does not seek an order directing Defendants to automatically

issue Continuation Awards and to decide the Applications for New Awards in favor of each and every recipient and applicant, respectively." (emphases omitted)). Rather, what Plaintiff has sought, the Department has provided. The entire dispute is thus moot. If Plaintiff wants to challenge the Department's recent actions, the only means for doing so is to file a new complaint.

### B. No Exception To Mootness Applies.

Because Plaintiff has received all requested relief, this case and the Motion no longer present a live dispute under the mootness doctrine. There are two possible exceptions to that doctrine for (1) actions "capable of repetition yet evading review" and (2) a defendant's "voluntary cessation of the relevant conduct." *Alphabet Workers Union-Commc'n Workers of Am., Local 9009 v. NLRB*, 134 F.4th 1217, 1225 (D.C. Cir. 2025) (quotation marks and brackets omitted). Neither applies here.

***Capable of Repetition Yet Evading Review.*** The capable-of-repetition-yet-evading-review exception requires that "the challenged action be too short in duration to be fully litigated before its cessation or expiration" and that "there be a reasonable expectation that the same complaining party would face the same action again." *Id.* at 1226. On the second prong, any suggestion that Plaintiff would face similar actions again from the Department is sheer speculation that cannot overcome mootness. *See Deakins v. Monaghan*, 484 U.S. 193, 200 n.4 (1988). In addition, there is no reasonable expectation of a plaintiff facing the same action again when a dispute is "sharply focused on a unique factual context." *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (quotation marks omitted). Such is the case here—this particular dispute about the Department's timing arises under certain appropriations statutes with their own unique language and terms. Were a similar dispute about HEP-CAMP to arise in the future, it would occur under an entirely different congressional enactment for a future fiscal year. As for this dispute, the Department intends to obligate and disburse all of the funds appropriated by Congress. *See* Ryder

Decl. ¶ 12. Any future dispute thus will involve no fiscal year 2025 money, as well as a different statute. *Accord City of Houston v. HUD*, 24 F.3d 1421, 1424 (D.C. Cir. 1994) ("It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation."). In other words, any future dispute will be different in multiple key ways from this dispute.

Moreover, when "estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc). By Plaintiff's own telling, this is the first time the Department has made HEP-CAMP awards later in the year. *See* Mot. 10. "[W]ith only one instance, there is no way to generalize" and expect a likely recurrence of this same dispute again. *Clarke*, 915 F.2d at 705. To be clear, the Department makes this argument only to show that Plaintiff has not demonstrated a reasonable likelihood that the Department's actions will recur in the future. The Department does not concede that it has ever been required to make HEP-CAMP awards at any particular time before the end of the fiscal year, regardless of historical practice. *See infra* § II.A.

***Voluntary Cessation.*** The voluntary-cessation exception does not apply either. Courts recognize this exception to prevent a scenario in which "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Put simply, the exception exists to prevent a defendant "from manipulating the judicial process." *Alphabet*, 134 F.4th at 1226 (quotation marks omitted).

The voluntary-cessation exception is not applicable where, as here, an agency takes the action a plaintiff's suit seeks to compel (as opposed to ceasing allegedly unlawful conduct) because there is no risk the agency will undo the action. *See Knox v. Serv. Emps. Int'l Union*, 567 U.S.

298, 307 (2012) (explaining that the voluntary cessation exception serves to prevent a defendant from "resum[ing] . . . the challenged conduct as soon as the case is dismissed"). The Department has acted on all pending HEP-CAMP new and continuation award decisions, and it is ensuring that all appropriated funds will be obligated and disbursed before the end of the fiscal year. There is no basis to suggest the Department will seek to undo its action. *See Alaska v. USDA*, 17 F.4th 1224, 1227 (D.C. Cir. 2025) (doubting that the voluntary-cessation exception applies to cases involving "a coordinate branch of government" like the Executive). Not only is that action exactly what Plaintiff requests, it is consistent with the Department's legal obligations. The voluntary-cessation exception has no applicability here.

Because the Department has already provided the relief Plaintiff seeks in the Complaint and the pending Motion, the entire case is moot. The Motion should be denied and the entire case dismissed under Federal Rule of Civil Procedure 12(b)(1) on that basis alone.

## II. Plaintiff Cannot Establish Likelihood of Success on the Merits Because All Its Claims Fail As A Matter Of Law.

Even if the Motion were not moot, Plaintiff has not demonstrated that its claims are likely to succeed on the merits. For the same reasons, Plaintiff has failed to state a claim under Rule 12(b)(6).

### A. Plaintiff's Claims Incorrectly Assume That July 1 Is The Applicable Deadline.

Although each of Plaintiff's claims is unlikely to succeed for other claim-specific reasons—and those are discussed further below—their most fundamental failure is that they get the Department's deadline wrong.

Plaintiff has based all (or most) of its claims on the notion that the Department "miss[ed] a mandatory July 1, 2025 deadline" to act on HEP-CAMP funds. Mot. ii. By missing that alleged deadline, Plaintiff says, the Department has withheld or delayed required agency action, *id.* at 28–

32, acted contrary to law, *id.* at 33, acted without observance of required procedure, *id.* at 35, violated the separation of powers, *id.* at 37, acted arbitrarily and capriciously, *id.* at 41, and justified mandamus relief to the Plaintiff, *id.* at 43. *See also id.* at 9, 10, 12, 41 (reiterating argument that July 1 is the deadline). At bottom, then, the keystone for these claims is that the Department was required to act by July 1. But the relevant deadline is not July 1, it is September 30, and the Department's alleged inaction before July 1 violates no laws.

To see why, start with the governing statues. The Higher Education Act authorizes the Department to award HEP-CAMP grants for a period of five years. 20 U.S.C. § 1070d-2(e). But the program requires funds to be appropriated by Congress, so the Act authorizes the appropriation of funds. *See id.* § 1070d-2(i). The Department is not required to award grants if Congress has appropriated no funds for that purpose. The focus then must be on the appropriations statutes.[3]

Those statutes do not set a deadline of July 1 for the HEP-CAMP funds. The appropriations statute for fiscal year 2024—as extended by the 2025 CR—requires that $8.1 billion in the Education for the Disadvantaged account "shall become available" on July 1. 2024 Appropriations Statute, tit. III, 138 Stat. 681–82. But Congress did not say that the $52.1 million allocated for HEP-CAMP grants must be part of that $8.1 billion. The only restrictions placed on HEP-CAMP funds are (1) no more than $52.123 million can be spent on HEP-CAMP grants; and (2) the $52.123 million is available until September 30, like all other funds in the bill. *Id.* at 681–82. Thus, although the Department has discretion to make HEP-CAMP funds available before September 30, the statute does not require it to do so.

[3] Plaintiff also cites 20 U.S.C. § 1225(a), *see* Mot. 12, which says the Department "may" make grants available based on the academic or school year, 20 U.S.C. § 1225(a). A statute stating that a government agency "may" take certain actions does not require the agency to take those actions.

Plaintiff rejects this plain textual conclusion, asserting that the 2024 Appropriations Statute requires that "a portion of the $52.12 million shall become available on July 1." Mot. 9. Plaintiff tellingly does not specify an exact amount, however, saying only that an "initial portion" should be available. *Id.* But the statutory text includes no such requirement—Congress never said that the $8.1 billion available on July 1 must include HEP-CAMP funds. And Congress certainly could have said so. For example, and most simply, Congress could have written that the funds for carrying out section 418A shall become available by July 1. Or it could have said that a certain percentage of the July 1 amount—an "initial portion," perhaps, *id.*—shall be available to carry out activities under section 418A, as Congress did in the same appropriations statute for English Language Acquisition. *See* 2024 Appropriations Statute, tit. III, 138 Stat. 684. Indeed, one of the reports cited by Plaintiff acknowledges that Congress can forward fund "*part* or all of a program" and gives an example in which Congress made certain funds available on July 1 for particular functions (specifically Job Corps Operations). *See* Megan S. Lynch and Jessica Tollestrup, Congr. Rsch. Serv., R43482, Advance Appropriations, Forward Funding, and Advance Funding: Concepts, Practice, and Budget Process Considerations 7–8 (2019) (emphasis added). But Congress made no such statements as to HEP-CAMP in the 2024 Appropriations Statute, and Plaintiff cannot "read into [a] statute[] words that aren't there." *United States v. Neely*, 124 F.4th 937, 943 (D.C. Cir. 2024).

The Conference Report accompanying the 2024 appropriations bill buttresses the conclusion that September 30 is the applicable HEP-CAMP deadline. *See* Committee Print of the Committee on Appropriations on H.R. 2882/Public Law 118-47 at 946–48 (2024) (Conference

Report).[4] Subtracting the amount that shall be available on July 1 and the amount that shall be available on October 1 from the topline total appropriated in the Education for the Disadvantaged account results in $87.123 million that has no alternate periods of availability and must be obligated by September 30. *See* Byrd Decl. ¶ 4(g)(ii). Based on the amounts included in the Conference Report, that $87.123 million number can be reached only by adding the HEP-CAMP appropriation to $30 million appropriated for Innovative Approaches to Literacy and $5 million that Congress expressly appropriated for Census Updates. *Id.*; *see also* 2024 Appropriations Statute, tit. III, 138 Stat. 684. The end result is that the only deadline applicable to the HEP-CAMP funds is September 30. Plaintiff suggests that Congress "necessarily expected" the grants to be available in July, Mot. 28, but Congress did not say that in the statutory text, and suggested otherwise in the accompanying report.

Plaintiff's discussion of advance and forward appropriations is therefore beside the point. *Id.* at 9, 12. The Department does not dispute that Congress has "provided forward funding and advance appropriations for the Education for the Disadvantaged account." *Id.* at 9. But Congress clearly has not specified that the HEP-CAMP funds fall into either bucket.

The Department's regulations also do not impose a July 1 deadline. The regulation governing new awards specifies the process that the Department will use to evaluate grant applications. *See* 34 C.F.R. § 75.217. Nowhere does that regulation mention a deadline to complete that process, much less a specific month and day. Likewise, another regulation requires the Secretary to notify a new-award applicant whose application is not selected for funding but does not require that notification to occur on a particular timeline. *See* 34 C.F.R. § 75.235(a). So

---

[4] Available at https://www.govinfo.gov/content/pkg/CPRT-118HPRT55008/pdf/CPRT-118HPRT55008.pdf. The relevant tables of the Report are also provided as Attachment A to the Byrd Declaration.

too with respect to the regulation for continuation awards, which says that "[i]f the Secretary makes a continuation award . . . [t]he new budget period begins on the day after the previous budget period ends." *Id.* § 75.253(d). Plaintiff asserts that, because "the budget period [for HEP and CAMP] begins July 1 and ends June 30," that regulation requires the Department to issue awards before July 1 and make funds available on July 1. Mot. 11–12. Plaintiff misreads that regulation. Section 75.253(d) simply says that the new budget period for a continuation award begins after the previous budget period—the regulation does not prevent the Secretary from granting an award after the budget period ends and retroactively setting the new award's budget period to July 1. *See also* 20 U.S.C. § 1225(a) (allowing the Department to make grant appropriations available "on the basis of an academic or school year differing from" the fiscal year in which the appropriation was made). The Department has already informed grantees seeking continuation awards that, in the event of an award, the budget period will begin on the day after the previous budget period. *See* Ryder Decl. ¶ 5. In short, Plaintiff has identified no statute or regulation, nor is the Department aware of any, that requires the budget period for HEP-CAMP awards to start on July 1 and end on June 30.

For these reasons, Plaintiff is incorrect that July 1 is the applicable deadline for taking action on both types of applications and obligating money for those awards. Nothing in the Higher Education Act, the applicable appropriations bills, or the Department's regulations requires the Department to make grant decisions before July 1 or to spend funds by then. The funds remain available for expenditure until September 30, 2025, and Plaintiff cannot ask the Department to move faster without some legal hook. The Department intends to expend all appropriated funds by September 30, meaning the Department has not and will not violate its legal responsibilities.

### B. Plaintiff's APA Claims Fail (Counts I–IV and VI).

#### 1. Administration of HEP-CAMP Is Committed To The Department's Discretion By Law (Counts I–IV and VI).

Plaintiff's Motion attempts to impose a timeline on the Department's administration of HEP-CAMP. But that administration is "committed to agency discretion by law" and unreviewable under the APA. 5 U.S.C. § 701(a)(2). In *Lincoln v. Vigil*, the Supreme Court explained that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion" because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." 508 U.S. 182, 192 (1993). "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes," but so long as the agency abides by the relevant statutes, the APA "gives the courts no leave to intrude." *Id.*

As noted above, the 2024 Appropriations Statute does not require the Department to make HEP-CAMP funds available before September 30. *See supra* at 16–19. Thus, the statute gives the Department broad discretion for when to make HEP and CAMP funds available. Indeed, the money that Congress appropriated here for HEP-CAMP is very similar to the lump-sum appropriation that the agency received in *Lincoln*—the Department has received a lump sum of $52.1 million "to meet permissible statutory objectives," *id.*, namely "carrying out section 418A of the [Higher Education Act]," 2024 Appropriations Bill, tit. III, 138 Stat. 682. As *Lincoln* made clear, the Department's "allocation of funds" from that lump-sum appropriation "requires 'a complicated balance of a number of factors,'" including whether the agency's "'resources are best spent' on one program or another," and "whether a particular program 'best fits the agency's overall policies.'" *Lincoln*, 508 U.S. at 193 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831

(1985)). Any determinations regarding the timing of HEP-CAMP award decisions are squarely committed to agency discretion. *See id.* at 193–94.

**2. The Department Has Acted, And Any Delay Was Not Unreasonable (Count I).**

Count I alleges that the Department has unlawfully withheld agency action on HEP-CAMP applications or, "[a]t the very least," unreasonably delayed such action in violation of 5 U.S.C. § 706(1). Mot. 30. As explained above, this claim, like all Plaintiff's claims, is moot in light of recent events—the Department has now acted, and there is no longer any inaction or delay about which Plaintiff can complain.

Regardless, no "legally required" action has been withheld. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). The 2024 Appropriations Statute does not require the Department to make available the monies appropriated for HEP-CAMP by July 1, nor do the Department's regulations. *See supra* at 16–20. Instead, the relevant appropriations statute provides that HEP-CAMP funds shall remain available through September 30. *See* 2024 Appropriations Statute, tit. III, 138 Stat. 681–82. Plaintiff thus cannot identify a "ministerial or non-discretionary duty amounting to 'a specific, unequivocal command'" in either statute or regulation that requires the Department to act before July 1. *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (quoting *Norton*, 542 U.S. at 63–64). As for the Department's expected timeline for awards, announced in the 2025 Application Packets, the Department merely noted there when grants were "expected to be awarded." 2025 Application Packets at 4 (emphasis added). That statement proffered the agency's expected timetable; it did not commit the agency to make awards by May 1, much less to obligate funds by July 1. Put simply, the statement merely "announce[d] . . . the agency's tentative intention for the future," and thus did not create a "binding

norm" requiring the Department to issue awards by July 1. *Pub. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974).

There has also been no unreasonable delay. As an initial matter, "[t]o state a claim for unreasonable delay," Plaintiff "must first allege that the agency failed to take a discrete agency action that it is required to take." *Da Costa v. Immig. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quotation marks omitted). As discussed above, the agency has acted on the HEP-CAMP applications, so any unreasonable-delay claim fails at the threshold.

Moreover, any delay before now was reasonable under the six *TRAC* factors that this circuit uses to analyze such claims. *See Telecommunications Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Although the Department "has possessed the applications for nearly a year now," Mot. 30, even multiple-year delays are not unreasonable, *see, e.g.*, *Munyaneza v. Blinken*, 2022 WL 4598629, at *3 (D.D.C. Sep. 30, 2022) (collecting authorities). This is particularly true given the lack of "a precise statutory timetable," which means the Department's "control over the timetable of its proceedings is entitled to considerable deference." *Mexichem Specialty Resins v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quotation marks omitted). Plaintiff also has alleged no basis for why the applications of its Affected Members should have been placed "at the head of the queue." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (quotation marks omitted). Plaintiff says that is not what it wants, but *Trump v. CASA, Inc.*, allows this Court to grant "complete relief" only "to each plaintiff with standing to sue." 606 U.S. —, 145 S. Ct. 2540, 2563 (2025). The entities with that standing are Plaintiff's so-called Affected Members, and an order prioritizing their applications would be improper. *See infra* at 31–33. Finally, the "human welfare" and economic interests asserted by Plaintiff are insufficient to render any delay unreasonable. Mot. 31. Economic harms generally do not require courts to order expedited agency

action, and "courts are hesitant to put much weight in considerations of human health and welfare" when an agency's entire docket involves issues of human health and welfare, like the Department's does. *Swisher Int'l, Inc. v. FDA*, 2024 WL 4119480, at *14, 22 (D.D.C. Sep. 9, 2024) (quotation marks omitted).

Count I fails as a matter of law.

### 3. The Department Has Not Acted Contrary To Law or Unconstitutionally (Counts II and IV).

Count II alleges that the Department is acting contrary to statutory authorities, but Plaintiff has not identified any statute that the Department is violating. Plaintiff highlights 20 U.S.C. § 1070d-2(a) as imparting a "mandatory duty" on the Department to award HEP and CAMP grants. Mot. 34. But even if that duty exists, the Department has not failed to meet it. The money for these grants remains available until September 30. The Department has already obligated about $46 million of the $52.123 million available and will obligate the remainder before September 30, after making any reconsideration decisions. *See* Ryder Decl. ¶¶ 10, 12. The Department has not violated any mandatory duty. *See supra* at 22–23. Nor is the Department acting contrary to the 2025 CR, another authority proffered by Plaintiff. *See* Mot. 34.

Count IV fails for all of these same reasons since it is conceptually identical to Count II. Plaintiff's argument in Count II is that the Department has failed "to obligate and disburse Congressionally-appropriated funds." Mot. 34. Count IV tracks the same theory, just cloaked in constitutional parlance. *See, e.g.*, Mot. 37 (alleging that Department has violated the Constitution because Congress passed "statutes instructing agencies to spend money on certain programs or

priorities"). But again, the Department intends to obligate all funds appropriated by Congress. *See* Ryder Decl. ¶ 12. Counts II and IV of the current Motion fail as a matter of law.[5]

#### 4. The Department Has Not Violated Any Procedural Requirement (Count III).

Count III fails as a matter of law for the simple reason that the Department has not failed to comply with any procedure "required by law." 5 U.S.C. § 706(2)(D). As noted already, no statute or regulation "required [the Department] to disburse the appropriated funds on July 1, 2025." Mot. 35; *see supra* at 16–20. The Department thus has not violated any statutory requirement, unlike in *Cabrera v. Dep't of Labor*, where the court found that the Department of Labor acted "in violation of the WIOA." — F. Supp. 3d —, 2025 WL 2092026, at *7 (D.D.C. July 25, 2025).

#### 5. The Department Has Not Acted Arbitrarily or Capriciously (Count VI).

As for Plaintiff's arbitrary-and-capricious claim, it too fails. The Department has violated no legal requirements—as said many times by now. Nor has the Department contravened its "past practices," namely a purportedly "settled course of action" whereby the Department obligated HEP-CAMP funds "by July 1." Mot. 40. An agency changes its position when it "acts inconsistently with an earlier position, performs a reversal of its former views as to the proper course, or disavows prior inconsistent agency action as no longer good law." *Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 569–70 (2025) (cleaned up). Plaintiff's Motion

[5] To the extent that Plaintiff argues on reply that the Department's decisions to frontload continuation awards and not to issue new awards violates various laws, the Motion (and complaint) as filed does not account for those decisions. They are thus "additional factual allegations" relating to as-yet-unalleged claims that Plaintiff can raise only through a new complaint (or a new case). *Nichols v. Vilsack*, 2014 WL 12941692, at *2 (D.D.C. May 29, 2014); *see also, e.g.*, *Sai v. TSA*, 54 F. Supp. 3d 5, 9 (D.D.C. 2014) (The court lacks jurisdiction over a preliminary-injunction motion that "raises issues different from those presented in the complaint." (quotation marks omitted)).

establishes none of these. That the Department previously made awards earlier in the year does not change that it has always had the authority to make awards later. And the Department has always informed recipients that the July 1 budget period start date was not set in stone. The vast majority of the GANs attached to Plaintiff's declarations include the following condition:

> THE SECRETARY ANTICIPATES FUTURE FUNDING FOR THIS AWARD ACCORDING TO THE SCHEDULE IDENTIFIED IN BLOCK 6. THESE FIGURES ARE ESTIMATES ONLY AND ***DO NOT BIND THE SECRETARY TO FUNDING THE AWARD FOR THESE PERIODS OR FOR THE SPECIFIC AMOUNTS SHOWN***. THE RECIPIENT WILL BE NOTIFIED OF SPECIFIC FUTURE FUNDING ACTIONS THAT THE SECRETARY TAKES FOR THIS AWARD.

ECF Nos. 3-3 at 94; 3-4 at 83; 3-5 at 150; 3-7 at 47; 3-8 at 46; 3-9 at 103 (emphasis added). Thus, the supposedly well-settled practice of issuing awards by July 1 has simply been an exercise of the Department's discretion. Indeed, the regulations have never prevented the Department from granting an award and setting a budget period that predates the award date. *See supra* at 20. The Department therefore has not violated any past practice.

Plaintiff's argument that the Department failed to consider reliance interests fares no better. Mot. 41. The Department's practice in the last few years "may have led [Plaintiff] to *believe*" that the Department would issue awards by July 1. *Wages and White Lion Invs.*, 604 U.S. at 585 (emphasis in original). "But such a belief about how an agency is likely to exercise its . . . discretion is not a serious reliance interest." *Id.* (quotation marks omitted). Nor has Plaintiff shown that it has built up "decades of reliance" on this alleged historical practice. *Id.* Any reliance interests thus are not significant enough to require the agency to address them.

### C. Plaintiff's Constitutional Claim Fails (Count V).

Count V asserts that the Department has violated various constitutional provisions "[b]y not issuing Continuation Awards and not acting on the Application[s] for New Awards." Mot. 36. Even if this claim were not moot now that the Department has issued continuation awards and

acted on the new award applications, it fails. Plaintiff cannot assert these supposedly constitutional violations through a freestanding cause of action. As the Supreme Court explained in *Dalton v. Specter*, 511 U.S. 462 (1994), not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Rather, the Supreme Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases); *see also Glob. Health Council v. Trump*, — F.4th —, 2025 WL 2480618, at *18 (D.C. Cir. Aug. 28, 2025) (noting the same distinction in *Dalton*). Claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" which can be asserted through a direct cause of action. *Dalton,* 511 U.S. at 473.

Here, Plaintiff's asserted constitutional claims are really "statutory" claims asserting that the Department exceeded its statutory authority. *Id.* at 474. For example, Plaintiff alleges that the Department has violated the separation of powers because it supposedly has "overridden the careful judgments of Congress" as expressed in appropriations statutes and violated the Take Care Clause by not fulfilling its "comprehensive set of statutory responsibilities." Mot. 37, 39. This is precisely the sleight of hand rejected by the Supreme Court in *Dalton*. "[S]tatutory claims do not become constitutional ones by operation of the separation-of-powers principles," invoked by Plaintiff, that "prevent . . . the Executive Branch from disregarding federal statutes." *Nat'l Treasury Emps. Union v. Vought*, — F.4th —, 2025 WL 2371608, at *19 (D.C. Cir. Aug. 15, 2025). If Plaintiff's argument were accepted, every garden-variety action by a federal agency alleged to be in violation of a statutory provision could be used to "transform a statutory claim into a constitutional one to avoid limits on judicial review," contrary to *Dalton*. *Glob. Health Council*, 2025 WL 2480618, at *8. Count V therefore fails as a matter of law.

### D. Plaintiff's *Ultra Vires* and Mandamus Claims Fail As A Matter Of Law (Counts VII–VIII).

Counts VII (*ultra vires*) and VIII (mandamus) fail for the same reasons as many of Plaintiff's other claims: Plaintiff has not shown a statutory violation by the Department. *Ultra vires* claims are confined to "extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority or acted so clearly in defiance of it." *Fed. Express Corp. v. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022) (quotation marks omitted). As discussed numerous times by now, the Department is not required to obligate HEP-CAMP funds by July 1. Thus, the Department has not violated the statute, much less in a "plain" or "extreme" way. *Id.* at 764 (quotation marks omitted); *see Glob. Health Council*, 2025 WL 2480618, at *12 (no *ultra vires* claim when plaintiffs could point to no statutory violation).

Similarly, mandamus relief follows only when "the agency has a crystal-clear legal duty to act." *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022). Plaintiff sees an "unquestionable" legal duty for the Department to issue awards by July 1, Mot. 43, but neither the relevant statutes nor the Department's own regulations require action on that timeframe. *See supra* at 16–20.

## III. Plaintiff Has Not Demonstrated That It Will Suffer Irreparable Harm.

Apart from the lack of any likelihood of success, Plaintiff also has failed to demonstrate that it will suffer irreparable harm if the Court does not enter a preliminary injunction. Here again, mootness considerations doom Plaintiff's pleaded harms.

To demonstrate irreparable harm, Plaintiff must meet a "high standard"—Plaintiff must show that it faces injuries that are "certain, great, actual, and imminent," *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008) (citation omitted), and that are "beyond remediation," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Furthermore, the irreparable harm pled must be harm to the Plaintiff, not third parties. "[H]arm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *State v. Musk*, 769 F. Supp. 3d 1, 7 (D.D.C. 2025) (quotation marks omitted). Finally, as relevant here: "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quotation marks omitted). Rather, it is black-letter law that economic harm is generally not irreparable. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

Plaintiff's Motion points to several supposed harms. These include that Plaintiff and its Affected Members "will shut down" and "cease to exist," and that the Affected Members "will not be able to carry out any of their work" "[w]ithout grant funding and staff." Mot. at 43–44. Elsewhere, the Motion laments an "immediate existential threat presented by the loss of funding," *id.* at 43, and the possibility that Plaintiff will "shut [its] doors" without dues paid by members, *id.* at 18. These harms are all mollified by the Department's recent actions. Now that the Department has made award decisions, many members will be able to pay their membership dues, and Plaintiff will be able to continue its operations and provide its usual services to members. In other words, there is no certain or imminent likelihood that Plaintiff "will shut down" now that the Department has issued some awards and intends to obligate all appropriated funds by September 30. Mot. 43. Even without that intervening action, Plaintiff's assertion that it "would *eventually* cease to exist" absent HEP-CAMP awards is too speculative to support a finding of irreparable harm. Contreras Decl. ¶ 34 (emphasis added).

As for the predicted fate of the Affected Members, at least some of them will receive grant funding with which to pay staff and continue their programs. And for the Affected Members who

did not receive a continuation award, they are free to seek reconsideration from the Department. *See* 34 C.F.R. § 75.253(g). Their harms are not raised in the Motion, which challenges delay and inaction, not the Department's decision on a particular grant. To make such allegations, Affected Members who did not receive continuation award funding would need to bring their own individual actions challenging the Department's decision on their specific grant. Plaintiff's Motion cannot and does not assert those harms for them. Nor can Plaintiff's Motion cite the harm allegedly suffered by students who benefit from these programs, since those students are not parties. *See, e.g.*, Contreras Decl. ¶¶ 30–32; Declaration of Luis Garcia ¶¶ 36–37, ECF No. 3-2.

For similar reasons, there is no basis to find irreparable harm as to the new award applicants. Plaintiff challenges only the Department's alleged inaction on their applications—an inaction that no longer exists—and thus cannot assert irreparable harms resulting from the Department's decision not to issue new awards. In any event, Plaintiff's Motion has not shown irreparable harm to new award applicants. Plaintiff's entire irreparable harm argument highlights what will happen "once grant funds are withdrawn." Mot. at 44 (quotation marks omitted). But new applicants either never received any funding to begin with or have no entitlement to a new five-year grant. Thus, Plaintiff has not shown that irreparable harm will result for new-award applicants. The inability to show irreparable harm is sufficient reason not to grant the requested preliminary relief as to new award applicants. *See Chaplaincy of Full Gospel* Churches, 454 F.3d at 297.

## IV. The Balance of Equities Does Not Favor The Requested Injunction.

Preliminary relief also is inappropriate because the balance of the equities and the public interest tips in the Department's favor for the simple reason that it has done what Plaintiff requested. *See Nken*, 556 U.S. at 435 (holding that "[t]hese factors merge when the Government is the opposing party"). Granting any kind of preliminary injunction at this stage would disrupt

the Department's authority to administer grant programs and act as a responsible steward of public funds. It would also "thwart[] the lawful exercise of authority of a duly appointed official" who has now issued HEP-CAMP decisions. *Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 31 (D.D.C. 2020). Any preliminary relief would thus "be inequitable and disserve the public interest" while disabling the Department from implementing the President's priorities consistent with its legal authorities. *Id.* "[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

## V. If The Court Decides To Grant Relief, Any Relief Should Be Limited to Affected Members.

As noted several times already, Plaintiffs are not entitled to the preliminary injunction their Motion seeks now that the Department has acted. But if the Court disagrees or determines that some other relief is warranted (and to be clear the Department does not concede that any such alternative remedy is available), the Supreme Court's *CASA* decision limits any relief only to the Affected Members. *Contra* Mot. 21. As *CASA* explained, "the question is not whether an injunction offers complete relief to *everyone* potentially impacted by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 2557 (emphases in original). Providing relief to nonparties "would not render [the plaintiff's] relief any more complete." *Id.* at 2558.

Here, the party before the Court is an association of "80-plus members" that participate in HEP-CAMP programs. Mot. 13. But the only members affected by the Department's alleged (and now erstwhile) inaction are the Affected Members that timely applied for new HEP-CAMP grants or have submitted the required reports and information to seek a continuation award. Compl. ¶¶ 13–14. Plaintiff has provided a list of these Affected Members. *See* Contreras Decl., Ex. A.

Notably, and key for the scope of permissible relief, Plaintiff says that "many" current HEP-CAMP applicants are members, but Plaintiff never says that it counts all applicants among its membership. *Id.* ¶ 17.

Those Affected Members are the only ones who have arguably alleged an injury sufficient to confer standing based on their allegations about the Department's failure to act on their applications. According to Plaintiff's list, there are 38 Affected Members. *See* ECF No. 6-3. Because Plaintiff as a membership association is entitled to relief only on behalf of those members that can establish standing "in their own right," *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), the "maximum" relief this Court can award is relief as to those 38 members, *CASA*, 145 S. Ct. at 2558. Plaintiff cannot seek (and the Court cannot award) relief on behalf of other applicants, whether they are unidentified members or non-members entirely.

Based on Plaintiff's list, a significant number of applicants are not entitled to relief through this case. The Department received 31 applications for new HEP grants and 38 applications for new CAMP grants. *See* Ryder Decl. ¶ 4. The Affected Members account for only five of those HEP applications and six of the CAMP ones. *See* ECF No. 6-3. As for continuation awards, 38 HEP grantees and 48 CAMP grantees were eligible for those awards. *See* Ryder Decl. ¶¶ 7–8. Yet the list of Affected Members includes only 17 HEP grantees and 25 CAMP grantees seeking continuation awards. *See* ECF No. 6-3. So, for example, a broad injunction directing the Department to carry out HEP-CAMP as required by law—which is what Plaintiff's Motion requests—would require the Department to resolve many applications regardless of an applicant's membership in the Plaintiff association. Even assuming the Department had not already made all funding decisions through its recent actions, such an injunction would grant relief to parties not before this Court, and is forbidden by *CASA*.

That Plaintiff also asserts organizational standing does not require broader relief. Plaintiff's primary organizational-injury theory is that the Department's alleged inaction has deprived Plaintiff of "dues paid by its members" and has forced Plaintiff to expend resources through increased "contact with members." Mot. 18. Plaintiff's alleged organizational injuries are thus limited to actions affecting its members. Given that Plaintiff does not represent all HEP-CAMP applicants and never says it has itself applied for a HEP-CAMP grant, Plaintiff's organizational interests do not justify relief beyond the Affected Members.

Plaintiff resists this conclusion, arguing that the Department cannot feasibly "peel off" the applications submitted by Affected Members. *Id.* at 21. Plaintiff provides no support for this assertion. The Department's evaluation is individualized, as Plaintiff acknowledges, *see id.* at 10–11, meaning the Department can adjudicate individual applications and requests. Indeed, Plaintiff appears to be asking for relief limited to the Affected Members; one declarant admits that Plaintiff has provided a list of Affected Members and their grant numbers "to enable the Court to direct the Department to take action on [those Affected Members'] grants and applications." Contreras Decl. ¶ 23.

In short, there is no preliminary injunction for the Court to enter because the Department has already provided the relief requested in Plaintiff's Motion. But if the Court does enter any injunction, it can only direct the Department to take action pertaining to the Affected Members. Anything broader would provide relief to nonparties, contrary to *CASA*.

## VI. Plaintiff Should Be Ordered To Post Security In Connection With Any Preliminary Injunctive Relief And Any Preliminary Relief Should Be Stayed Pending Appeal.

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiff's Motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiff to post security. Under Federal Rule of Civil Procedure

65(c), the Court may issue preliminary injunctive relief "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues preliminary relief here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any such order. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond"). Since Plaintiff is at least in part seeking the disbursement of grant funds, the Court should order the posting of a bond equal to the size of any payment that the Court orders on a preliminary basis here. Without such a protective measure, there may be no way to recover the funds lost to United States taxpayers (or other grantees) if this Court or appellate courts were later to find that the Department was "wrongfully enjoined." *See* Fed. R. Civ. P. 65(c); *cf. Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. —, 145 S. Ct. 2658, 2659 (2025) (stating injunction because the plaintiffs never said they would "repay grant money if the Government ultimately prevail[ed]" during appellate process).

Finally, to the extent the Court issues any injunctive relief, the Government respectfully requests that such relief be stayed pending the disposition of any appeal that is authorized. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (setting forth the factors "regulating the issuance of a stay"). For the reasons explained above, the Government has made a strong showing that it is likely to succeed on the merits and will be irreparably injured absent a stay. *See id.* Those factors outweigh any injury Plaintiff might suffer.

## CONCLUSION

The Court should deny Plaintiff's Motion for a Preliminary Injunction and dismiss Plaintiff's Complaint.

Dated: September 19, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*